IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

JUSTICE COAL OF ALABAMA, LLC,

        Plaintiff,

v.                                                                  CIVIL ACTION NO. 5:24-cv-00658

RAMACO RESOURCES, LLC and
MABEN COAL LLC,

        Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending are Defendants Ramaco Resources, LLC ("Ramaco") and Maben Coal LLC's ("Maben") Motion to Dismiss [ECF 15], filed February 4, 2025, and Motion for Change of Venue [ECF 20], filed February 25, 2025. Plaintiff Justice Coal of Alabama, LLC ("Justice Coal") responded in opposition to both Motions [ECF 17, 22], to which Defendants replied. [ECF 19, 23]. The motions are ready for adjudication.

**I.**

On October 4, 2023, Justice Coal and non-party EMCOAL, Inc. ("EMCOAL") entered into an Asset Purchase Agreement ("Agreement"), under which Justice Coal agreed to sell certain assets to EMCOAL, including the Glade Preparation Plant ("Prep Plant") located in Jackson County, Alabama. [ECF 11 at ¶¶ 1, 9]. The Agreement was subject to the fulfillment of certain conditions at or before the closing of the sale. [*Id.* at ¶ 9]. EMCOAL was required to "obtain consent from the relevant governmental regulatory agencies for the transfer of [Justice Coal's]

permits to EMCOAL." [*Id.*]. The Agreement allegedly indicated "no transfer of assets would occur," and the "Agreement would terminate [] if EMCOAL was unable to obtain consent from the relevant governmental regulatory agencies on or before December 31, 2023, for the transfer of all . . . permits held in connection with the assets." [*Id.* at ¶ 10].

On November 8, 2023, Justice Coal and EMCOAL entered into a First Amendment to the Asset Purchase Agreement ("First Amendment"). [*Id.* at ¶ 11]. The First Amendment (1) reacknowledged title to the Prep Plant would not transfer until the permits were transferred to EMCOAL, and (2) promised EMCOAL would not attempt to sell the Prep Plant prior to the transfer without Justice Coal's written consent. [*Id.*]. EMCOAL sold the Prep Plant to Defendants. [*Id.* at ¶ 13]. EMCOAL allegedly "failed[, however,] to obtain the necessary regulatory approval to transfer" the required permits before selling the Prep Plant to Defendants. [*Id.* at ¶¶ 12–13]. Justice Coal claims the Purchase Agreement did not close and that EMCOAL "simply stole the Prep Plant" and sold "it to one or both Defendants." [*Id.* at ¶ 13]. The Defendants now operate the Prep Plant in Wyoming County, West Virginia. [*Id.* at ¶ 16].

On November 15, 2024, Justice Coal instituted this action against Defendants. [ECF 1]. It then filed the operative Amended Complaint ("Complaint") on January 21, 2025. [ECF 11]. Justice Coal pleads three claims against Defendants. Count I alleges conversion, Count II alleges unjust enrichment, and Count III alleges negligence. [*Id.* at ¶¶ 17–28].

On February 4, 2025, Defendants moved to dismiss pursuant to *Federal Rules of Civil Procedure* 12(b)(6) and 12(b)(7). [ECF 15]. On February 25, 2025, Defendants further moved to transfer venue to the United States District Court for the Northern District of Alabama. [ECF 20]. Defendants contend transfer is warranted for two reasons: (1) "the case could have been filed originally in the Northern District of Alabama," and (2) "a change of venue is appropriate to

accommodate the convenience of the parties and the Alabama-based witnesses and in the interest of justice because Alabama law will govern the outcome of this case." [*Id.* at 1].

## II.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).

Our Court of Appeals has identified four factors to be considered: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). "As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Id.* (internal quotations omitted). The interest of justice factor is broad and "encompasses public interest factors aimed at systematic integrity and fairness." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (internal quotations omitted). Such factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Const. Co.*, 571 U.S. at 64 n.6. "It is well settled that the decision whether to transfer a matter to another district is committed to the sound discretion of the

district court." *Vass v. Volvo Trucks N. Am., Inc.*, 304 F. Supp. 2d 851, 857 (S.D. W. Va. 2004); *see also FTC v. Pukke*, 53 F.4th 80, 110 (4th Cir. 2022) ("Once a suitable venue is found, the decision whether to transfer is left to the discretion of the trial court."); *Plumbing Servs., Inc.*, 791 F.3d at 443 ("We review decisions on whether to transfer venue under 28 U.S.C. § 1404 for abuse of discretion.").

### III.

Given that Justice Coal contests the venue change, the Court will focus its analysis on the four factors recited above in determining whether transfer to the Northern District of Alabama is warranted.

### A. Plaintiff's Choice of Venue

"As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Plumbing Servs., Inc.*, 791 F.3d at 444 (internal quotations omitted). This is especially true "where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action." *comScore, Inc. v. Integral Ad Sci., Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (internal quotations omitted). Thus, "where 'a plaintiff [] prove[s] a legitimate connection to the [chosen] district,' this factor 'strongly weigh[s] against transfer.'" *Id.* (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)).

While Defendants are correct that Justice Coal is not registered to do business in West Virginia, this is not the appropriate standard for determining the domicile of a limited liability company or transfer of an action. Justice Coal has established a legitimate connection here inasmuch as the Prep Plant is now located in Wyoming County, West Virginia. Plaintiff's choice

of venue is the Southern District of West Virginia. Accordingly, the Court concludes that this factor weighs strongly against transfer.

### B. Witness Convenience and Access

As to the second factor, Defendants contend that virtually all non-party witnesses with first-hand knowledge and who may be expected to testify on pertinent issues relating to the Bill of Sale, the operational condition of the Prep Plant at the time of sale, and the efforts to transfer Justice Coal's Tennessee permits are located in either Alabama or Tennessee. [ECF 21 at 5–6]. Justice Coal responds that Defendants have only listed conjectural Alabama witnesses and that, even if they have any importance, "there are equally if not more important witnesses in southern West Virginia or closer to this district than to northern Alabama." [ECF 22 at 8]. Specifically, Justice Coal contends the only necessary witnesses are Plaintiff's officers, EMCOAL's officers, and Defendants' officers -- all of which are not located in areas significantly closer to the Northern District of Alabama.

Although this case is centered around the Prep Plant now located in West Virginia, the material facts of this litigation surround EMCOAL's purchase of the Prep Plant from Justice Coal and EMCOAL's transfer of the Prep Plant to Defendants, which occurred in Alabama. As Defendants note, virtually all of the witnesses who have any first-hand knowledge concerning the pertinent issues involved, and who may be expected to testify at trial, reside in or near the Northern District of Alabama. Given the location of the potential witnesses, the Court agrees that their required travel to West Virginia would cause inconvenience. Accordingly, the Court concludes that this factor weighs in favor of transfer.

### C. Convenience of the Parties

Regarding the third factor, Defendants again assert that their anticipated witnesses and relevant documents are located in Alabama. [ECF 21 at 7]. As to the location of the Prep Plant at issue, Defendants maintain that Justice Coal seeks to litigate in this forum "for no reason other than the fact that the preparation plant ended up there." [*Id.*]. Justice Coal responds, however, that this Court is more convenient for all parties than the Northern District of Alabama would be as it pertains to their respective headquarters.[1] [ECF 22 at 10]. In addition, it claims that the litigation concerning the condition and depreciation of the Prep Plant, as well as its recovery, would be more efficient in the district where it is located. [*Id.* at 9].

The Court concludes that this District is the most convenient forum given that Justice Coal primarily seeks to recover the Prep Plant, which is located in Wyoming County. While it is true that Alabama may be a slightly more convenient forum for Defendants, "the purpose and function of § 1404(a) is not to shift the balance of inconvenience from defendant to plaintiff." *Noetic Specialty Ins. Co. v. N. Carolina Mut. Wholesale Drug Co.*, 453 F. Supp. 3d 842, 847 (E.D. Va. 2020) (internal quotations omitted). As such, this Court concludes that this factor does not weigh in favor of transfer.

### D. Interest of Justice

"The 'interest of justice' category is designedly broad." *JTH Tax, Inc.*, 482 F. Supp. 2d at 738. Indeed, this broad factor is intended to encompass "those factors unrelated to witness and party convenience." *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939–40 (E.D. Va.

---

[1] Justice Coal's officers reside in Roanoke, Virginia, and Defendants are headquartered in Lexington, Kentucky.

2001). Instead, "the interest of justice encompasses public interest factors aimed at systematic integrity and fairness." *Byerson*, 467 F. Supp. 2d at 635 (internal quotations omitted). "Most prominent among the elements of systematic integrity are judicial economy and the avoidance of inconsistent judgments." *Id.* Additionally, "[f]airness is assessed by considering docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.*

Defendants contend judicial economy is best served by transfer. Specifically, they assert that, pursuant to the doctrine of *lex loci delicti*, "Alabama law will likely govern the outcome of this case, and the courts in Alabama are obviously more familiar with the intricacies of that State's laws." [ECF 21 at 7–8]. Justice Coal responds that West Virginia law governs its claims inasmuch as it is the "state where Defendants' wrongful retention of Plaintiff's property is occurring and where that property is being depreciated through Defendants' use." [ECF 23 at 12].

Our Court of Appeals advises the "proper choice-of-law analysis . . . varies depending on how a claim is characterized, *e.g.*, as a tort claim or as a contract claim. Choice of law in contracts cases is governed by the rule of *lex loci contractus*, . . . and choice of law in torts cases is generally governed by the rule of *lex loci delicti*." *Kenney v. Indep. Ord. of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014) (internal citations omitted).

Under *lex loci delicti*, the Court must apply the "law of the place of the wrong." *Kenney*, 744 F.3d at 908. "Although conduct that causes harm can occur in one state and the resulting injury to a plaintiff can occur in another state, 'the substantive rights between the parties are determined by the law of the place of injury.'" *Id.* (citing *West Virginia ex rel. Chemtall Inc. v. Madden*, 216 W.Va. 443, 451, 607 S.E.2d 772, 780 (2004)). "The place of wrong is in the state

where the last event necessary to make an actor liable for an alleged tort takes place." Restatement (First) of Conflict of Laws § 377 (1934). Particularly, "[w]hen harm is caused to land or chattels, the place of wrong is the place where the force takes effect on the thing." Restatement (First) of Conflict of Laws § 377, cmt. a, note 3 (1934).

West Virginia has deviated from this rule when faced with "particularly thorny conflicts problems" involving "complex, or unusual contractual situations, and torts which very existence are dependent upon the brea[d]th and legality of contracts." *Ball v. Joy Mfg. Co.*, 755 F. Supp. 1344, 1351 (S.D. W. Va. 1990) (internal quotation marks and citations omitted); *see also Kenney*, 744 F.3d at 907; *Barr v. Jackson*, 250 W. Va. 399, 903 S.E.2d 268, 273 (Ct. App. 2024).

In such instances, it utilizes the standards set forth in the *Restatement (Second) of Conflict of Laws*, which focuses on the state with "the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145(1) (1971). In determining what state has the most significant relationship to the matter, a court is to consider the following contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties, is centered." Restatement (Second) of Conflict of Laws § 145(2) (1971).

First, Justice Coal's injury occurred in Alabama, inasmuch as that is where the Defendants' actions took effect on the Prep Plant. Specifically, where they purchased it, caused it to be dismantled, and arranged its removal. *See Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 137 (2d Cir. 2022); *First Union Nat. Bank v. New York Life Ins. & Annuity Corp.*, 152 F. Supp. 2d 850, 854 (D. Md. 2001) (finding the state where the misappropriation of the property occurred was the place of wrong for a conversion claim rather than the state where the plaintiff demanded its return).

8

Second, each of the three counts pertains to the Defendants' unlawful acquisition and possession of the Prep Plant, a transaction that occurred in Alabama. While Justice Coal claims injuries resulting from the Defendants' transportation, operation, and refusal to return the Prep Plant to Alabama, the actions are collateral to the Defendants' purchase of the Prep Plant, rather than separate and independent wrongful acts. Third, Justice Coal is domiciled in Virginia and West Virginia but primarily does business in Alabama, and the Defendants are headquartered in Kentucky. Lastly, the relationship between Justice Coal and the Defendants is quite removed in that they are not in privity of contract. Thus, their relationship is centered in Alabama, where the Prep Plant that Justice Coal seeks to obtain was purportedly purchased and dismantled by Defendants. Inasmuch as Alabama has the most significant relationship to the parties and the Defendants' alleged wrongs, Alabama law applies pursuant to the Restatement Approach.

Given the Court's finding that Alabama law applies, the Court's knowledge of Alabama law, the procedural posture of the case, and the little amount of time and judicial resources expended on this matter, it is in the interest of justice that this case be transferred to the United States District Court for the Northern District of Alabama to promote integrity and fairness.

## IV.

Based upon the foregoing discussion, the Court **GRANTS** Defendants' Motion to Change Venue **[ECF 20], TRANSFERS** this action to the United States District Court for the Northern District of Alabama, and **DENIES AS MOOT** Defendants' Motion to Dismiss **[ECF 15].**

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

9

ENTER:        May 5, 2025

Frank W. Volk
Chief United States District Judge